IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 13-cv-02596-PAB-BNB

KEITH DALTON,

    Plaintiff,

v.

MILLICE ENTERPRISES, LLLP and
CHERRY CREEK CLUB, LLC, d/b/a Cherry Creek Athletic Club,

    Defendants.

_____

**ORDER**
_____

This matter is before the Court on defendants' Motion for Summary Judgment [Docket No. 28]. Plaintiff asserts four claims for relief: race discrimination under both federal and Colorado law, retaliation, and wrongful termination. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I. BACKGROUND

Plaintiff was born on November 26, 1962. Docket No. 35 at 1, ¶ 1. In February 2007, Plaintiff began working for defendant Cherry Creek Athletic Club ("CCAC") as a personal trainer. Docket No. 28 at 2, ¶ 1. In June 2008, plaintiff moved to a position as a sales associate. *Id.* ¶ 2. Between June 2008 and December 2010, plaintiff was never made aware of any complaints about his performance. Docket No. 35 at 1-2, ¶ 4.

In September 2010, plaintiff began working under a new supervisor, Jennifer Keuber. Docket No. 28 at 2, ¶ 3. According to plaintiff's affidavit, Ms. Keuber often

made derogatory comments about older employees and members and encouraged sales associates to focus on signing up younger members. Docket No. 35 at 4, ¶ 6(f). Ms. Keuber frequently commented that plaintiff was a "good 'ol boy," and at one point threatened to force plaintiff to take an Aqua Aerobics class. *Id.* ¶ 6(e).

On November 12, 2010, Ms. Keuber claimed she received a telephone call from a prospective CCAC member who claimed that, during a phone conversation with plaintiff, plaintiff abruptly hung up the phone after the prospective member said that he was not interested in joining the club. Docket No. 28 at 2-3, ¶ 4. In late November, 2010, Ms. Keuber claims that plaintiff, while working with a couple on a prospective membership, left the couple to discuss the membership on their own and told them to "come and get [him] when you're ready." *Id.* at 3, ¶ 5. On December 4, 2010, a CCAC member named Elizabeth Metz complained of an interaction that plaintiff had with her husband. *Id.* ¶ 6; *see also* Docket No. 28-2 at 1. Ms. Metz described plaintiff as "discourteous." *Id.* Regarding this incident, plaintiff claims that he was enforcing CCAC's written guest pass policy, and that Ms. Metz's husband had been attempting to use an invalid guest pass to gain free entry into CCAC. Docket No. 35 at 9-10, ¶ 7(c). On December 7, 2010, plaintiff received a written warning (the "December 7 warning") for unprofessional conduct with members, citing the three above-described incidents. *See* Docket No. 28-1 at 1; Docket No. 35 at 9.

On June 29, 2011, prospective member Anne Bachmann wrote to CCAC's general manager about a "negative encounter" with plaintiff. Docket No. 28-4 at 1. Ms. Bachmann, a former member, complained that when she and her partner inquired about re-joining CCAC, plaintiff "shoved" a price card "under [their] noses," did not

2

provide a tour or other information, and was "condescending" when she inquired about the age limit for student rates.  *Id.*  Regarding this incident, plaintiff's affidavit states that Ms. Bachmann and her partner were angry that plaintiff refused to bend CCAC rules and policy and attempted in various ways to obtain discounts to which they were not entitled, which included requesting a discount for married couples even though the couple could not prove they were married, asking for student pricing even though Ms. Bachmann was older than 24, the maximum allowable age for that discount, and asking for a senior discount although Ms. Bachmann was younger than the required age. Docket No. 35 at 11, ¶ 8(a).  On July 4, 2011, defendants claim that a recently-divorced former member complained that plaintiff was rude to her when she attempted to set up her own individual membership.  Docket No. 28 at 4, ¶ 11.  According to defendants, plaintiff informed the former member that she should have adjusted her membership before her divorce.  *Id.*  Plaintiff admits that the interaction took place and claims that the customer was upset because he did not have the authority to waive CCAC's initiation fee.  Docket No. 35 at 12, ¶ 8(b).  On July 11, 2011, according to defendants, another member contacted CCAC's general manager to complain that plaintiff had made promises that were never delivered, and asked to cancel his membership. Docket No. 28 at 5, ¶ 12.  On June 30, 2011, another sales associate, Ms. May, informed CCAC management in a resignation letter that "a write up given to [plaintiff] was false."  Docket No. 35-13 at 1.  According to plaintiff, CCAC never investigated the false writeup.

CCAC terminated plaintiff on July 13, 2011.  Docket No. 28 at 5, ¶ 13.  Plaintiff received a termination notice that listed the June 29, July 4, and July 11 incidents, as

well as the three incidents referred to in the December 7 warning, as grounds for his termination. *See* Docket No. 28-6. Although Ms. Keuber informed sales associates that the decision to terminate plaintiff was made by general manager Dennis Bachman, Mr. Bachman wrote to Ms. Keuber that he was "very surprised" to hear this. Plaintiff states that the decision to terminate plaintiff was Ms. Keuber's alone. *See* Docket No. 35-3.

Plaintiff brings claims for violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, the Colorado Anti-Discrimination Act, Colo. Rev. Stat. ¶ 24-34-401 *et seq.*, retaliation, and wrongful termination.

## II. LEGAL STANDARD

Summary judgment is warranted under Fed. R. Civ. P. 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

However, "[w]hen, as in this case, the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage

by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)) (internal quotation marks omitted). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115 (citing *Hulsey v. Kmart, Inc.*, 43 F.3d 555, 557 (10th Cir. 1994)). "In applying this standard, we view all facts and any reasonable inferences that might be drawn from them in the light most favorable to the nonmoving party." *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994).

### III. ANALYSIS

#### A. ADEA Claim

##### 1. *Prima Facie Case*

The ADEA prohibits employers from discriminating against any "individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). It protects employees who are forty

years of age or older. *Id.* at 631(a). The ADEA requires "but-for" causation, meaning that a plaintiff claiming age discrimination must establish by a preponderance of the evidence that, but for his age, his employer would not have taken the adverse action. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177-78 (2009). However, "*Gross* does not disturb longstanding Tenth Circuit precedent by placing a heightened evidentiary requirement on ADEA plaintiffs to prove that age was the sole cause of the adverse employment action." *Jones v. Okla. City Pub. Schs.*, 617 F.3d 1273, 1278 (10th Cir. 2010). A plaintiff may prove discrimination indirectly, using the *McDonnell Douglas* three-part burden-shifting framework. *Hysten v. Burlington N. & Santa Fe Ry. Co*, 296 F.3d 1177, 1180 (10th Cir. 2002); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Jones*, 617 F.3d at 1278 (*Gross* "does not preclude our continued application of *McDonnell Douglas* to ADEA claims."). As plaintiff does not offer direct evidence of discrimination, the Court will apply the *McDonnell Douglas* framework to his claims.[1]

At step one of the *McDonnell Douglas* inquiry, a plaintiff must establish a prima facie case by showing that "(1) he is within the protected age group; (2) he was doing satisfactory work; (3) he was discharged; and (4) his position was filled by a younger person." *Rivera v. City & Cnty. of Denver*, 365 F.3d 912, 920 (10th Cir. 2004) (citing *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998)). If the plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant

---

[1]Plaintiff brings a claim under the Colorado Anti-Discrimination Act, Colo. Rev. Stat. § 24-34-401, *et seq.* Colorado has adopted the *McDonnell Douglas* approach for proving an inference of discriminatory intent. *See St. Croix v. Univ. of Colo. Health Sciences Ctr.*, 166 P.3d 230, 236 (Colo. App. 2007).

employer to show that it had a legitimate, nondiscriminatory reason for its adverse employment action. *Sandoval v. City of Boulder, Colo.*, 388 F.3d 1312, 1321 (10th Cir. 2004). If the defendant puts forward a legitimate reason, the Court must grant the defendant summary judgment, unless the plaintiff can show a genuine issue of material fact as to whether the stated reason for the adverse action is pretextual. *Id.*

Here, the first, third, and fourth elements of plaintiff's prima facie case are undisputed, *see* Docket No. 28 at 8, but defendants argue that plaintiff was not performing his job satisfactorily. *Id.* at 9. Defendants assert that plaintiff was terminated for misconduct, was not able to communicate effectively with prospective customers, and was costing defendants membership sales. *Id.* Plaintiff responds that defendants have identified no evidence of poor sales, that CCAC's records show that he routinely met his sales goals, and that his sales numbers were in line with the rest of the sales team. Docket No. 34 at 7; *see also* Docket No. 35-1.

The Court finds that there is a disputed issue of fact as to whether plaintiff was performing satisfactorily. The Tenth Circuit has held that this element may be satisfied "by credible evidence that [plaintiff] continued to possess the objective qualifications [he] held when [he] was hired, or by [his] own testimony that [his] work was satisfactory, even when disputed by [his] employer, or by evidence that [he] had held [his] position for a significant period of time." *MacDonald v. Eastern Wy. Mental Health Ctr.*, 941 F.2d 1115, 1121 (10th Cir. 1991) (abrogated on other grounds by *Randle v. City of Aurora*, 69 F.3d 441 (10th Cir. 1995)). Plaintiff has provided testimony that his work was satisfactory and has provided CCAC records showing that his sales numbers were

at least comparable to other members of CCAC's sales team. *See* Docket No. 35-1. This is sufficient to create a genuine issue of material fact as to whether or not plaintiff's performance was satisfactory.

### 2. Reason for Termination

Although defendants do not articulate the precise reason for plaintiff's termination in their brief, defendants appear to rely on the totality of complaints against plaintiff as their legitimate, non-discriminatory reason for terminating plaintiff. *See* Docket No. 28 at 9. Defendants attach an unsigned termination letter to their motion that lists three different customer complaints between June 29, 2011 and July 11, 2011. Docket No. 28-6 at 1. The termination letter also references Ms. Keuber's December 7, 2010 warning letter, which noted three instances of plaintiff's unprofessional conduct towards members and prospective members. *See id.* at 2; *see also* Docket No. 28-1 at 1-2. The earlier warning referenced the November 2010 voicemail from a prospective member, Ms. Keuber's observation that in November 2010, plaintiff "offered to step away" from a prospective couple "in order for them to discuss whether they want to join," and the December 4, 2010 email from member Elizabeth Metz complaining about plaintiff's treatment of her non-member husband. *See* Docket No. 28-1 at 1. Because defendants' proffered reason is not facially prohibited, defendants have satisfied their burden to produce legitimate, non-discriminatory reasons for terminating plaintiff's employment. *See Stinnett v. Safeway, Inc.*, 337 F.3d 1213, 1218 (10th Cir. 2003).

### 3. *Pretext*

A plaintiff may show pretext by demonstrating that there are "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's stated reason such that "a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (quoting *Olson v. Gen. Elec. Astrospace*, 101 F.3d 947, 951-52 (3d. Cir. 1996) (internal quotation marks omitted). In assessing pretext, a court must "examine the facts as they appear *to the person making the decision*" instead of relying on the "plaintiff's subjective evaluation of the situation." *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1044 (10th Cir. 2011) (internal citation omitted) (emphasis in original). The court's role is to prevent and redress employment discrimination, and not to act as a "'super personnel department,' second guessing employers' honestly held (even if erroneous) business judgments." *Young v. Dillon Cos., Inc.*, 468 F.3d 1243, 1250 (10th Cir. 2006) (quotation omitted).

Evidence of pretext may take a variety of forms. Plaintiff can show pretext by pointing to "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence." *Morgan*, 108 F.3d at 1323. Although the requirements to show pretext are not set in stone, "[a] plaintiff typically makes a showing of pretext in one of three ways: (1) with evidence that the defendant's stated reason for the adverse employment action was false, . . . (2) with

evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances, . . . or (3) with evidence that the defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting the plaintiff." *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000); *see also Testerman v. EDS Tech. Prods. Corp.*, 98 F.3d 297, 303 (7th Cir. 1996) (a plaintiff may establish pretext by presenting evidence "tending to prove that the employer's proffered reasons are factually baseless, were not the actual motivation for the discharge in question, or were insufficient to motivate the discharge").

Plaintiff objects that many of the events listed by defendants in support of their non-discriminatory reason, namely, the November 12, 2010 voicemail, Ms. Keuber's observations about plaintiff's professionalism in late November 2010, and a July 11, 2011 phone call to Dennis Bachman, are hearsay or unsupported by evidence. Docket No. 34 at 10-11. These are criticisms of plaintiff not supported by emails from a member or potential member. Defendants do not respond to this objection. *See* Docket No. 36. The Court finds that the records of those incidents, namely, the termination letter and the December 7 warning, are not inadmissible hearsay. The Court will not consider the December 7 warning as evidence that these underlying incidents occurred, but rather as evidence of CCAC's record of plaintiff's past performance, which factored into CCAC's decision to terminate plaintiff's employment. The November 12 voicemail and Ms. Keuber's observations in late November 2010 referred to in the warning letter will therefore not be considered for the truth of the matters asserted. *See Brokenbaugh v. Exel Logistics North America, Inc.*, 174 F. App'x

39, 43 (3d Cir. 2006) (finding that notes of prior misconduct in an employee's file were offered as evidence of employer's decision, not for the truth of the matter asserted); *see also Capobianco v. City of New York*, 422 F.3d 47, 55-56 (2d Cir. 2005) (finding that a document in a personnel file of a plaintiff in an ADA discrimination case was admissible to show the employer's state of mind in firing him and thus properly considered at summary judgment). Likewise, the July 11, 2011 phone call to Dennis Bachman that is noted in the termination letter is admissible as evidence supporting CCAC's state of mind in deciding to terminate plaintiff, but will not be considered for the truth of the matter asserted.

The remaining incidents that support CCAC's legitimate nondiscriminatory reason for terminating plaintiff are ones evidenced by emails received from members or potential members, namely, the December 4, 2010 email from Elizabeth Metz regarding plaintiff's interaction with her husband, Docket No. 28-2 at 1, the June 29, 2011 email from Anne Bachmann, Docket No. 28-4 at 1, and the July 4, 2011 email concerning plaintiff's interaction with former member Serena Teng. Docket No. 28-5 at 1. In each instance, plaintiff claims that the complaints were a result of him upholding CCAC's policies. In particular, plaintiff states that Ms. Metz's husband was attempting to gain free entry to CCAC after exhausting all of his guest passes, and that managers (including Ms. Keuber) subsequently referred to the incident as an example of how non-members attempted to abuse CCAC's guest pass policy. Docket No. 35 at 9-10, ¶ 7(c). Likewise, plaintiff claims that Anne Bachmann and her partner, Ron Chrysler, complained because he was unable to give them discounts for which they did not qualify under CCAC policies, namely, the married couple discount, which plaintiff could

11

not give them because they were not married, the student discount, which was limited to members under the age of 24, and the senior citizen discount, for which Ms. Bachmann was too young.  Docket No. 35 at 11, ¶ 8(a).  Finally, regarding the incident with Ms. Teng, plaintiff admits that the incident occurred, but states that he informed Ms. Teng that he was not authorized to waive her initiation fee despite her status as a recent member.  Docket No. 35 at 12, ¶ 8(b).  Plaintiff further notes that the internal CCAC email evidencing Ms. Teng's complaint includes handwritten notes, purportedly from Ms. Keuber, that Ms. Teng was "extremely upset that [plaintiff] treated her so rudely," but that the document is not supported by sworn affidavits from a witness with personal knowledge of that conversation.  Docket No. 34 at 12; *see also* Docket No. 28-5 at 1.

The Court finds that plaintiff has not shown that CCAC's proffered legitimate nondiscriminatory reason for terminating his employment was pretextual.  Although plaintiff defends his actions that led to the customer complaints, the existence of the complaints themselves (with the exception of the July 11, 2011 phone call to Dennis Bachman) are undisputed.  "The relevant inquiry is whether [defendants] reasonably believed the [customers'] complaints, not whether the complaints eventually proved to be accurate."  *Brown v. East Miss. Elec. Power Ass'n*, 989 F.2d 858, 862 (5th Cir. 1993).  Plaintiff fails to show that, at the time he was terminated, defendants had reason to question the complaints' accuracy.[2]  This alone is sufficient to defeat plaintiff's

---

[2]The Court notes that plaintiff testified at his deposition about a written response that he submitted to Ms. Keuber after the December 7 warning.  *See* Docket No. 29-1 at 15, 60:2-7.  Neither party has attached plaintiff's written response, however.

12

claim that the complaints were mere pretext. *See Sabin v. Amrep* Inc., No. 06-cv-02016-EWN-MEH, 2007 WL 4459149 at *14 (D. Colo. Dec. 14, 2007) ("An employer's receipt of complaints from customers is, by itself, a legitimate reason to terminate an employee"); *see also Crocker v. City of Cleveland*, 39 F. App'x 248, 250 (6th Cir. 2002) (proof of inappropriate conduct resulting in a customer complaint is a legitimate reason for termination).

The Court further finds that plaintiff has not otherwise created a genuine issue of material fact regarding the reason for his termination. Plaintiff's evidence consists of Ms. Keuber's allegedly age-related comments, including Ms. Keuber's statement that plaintiff is successful in his job because he is a "part of the good ol' boy school," Docket No. 29-1 at 40, 159:19-21; that he was "old school" because he had trouble using email and other technology; *id.* at 40, 158:18-159:3, that she made derogatory comments about older members, *id.* at 40, 159:12-18; Ms. Keuber's "body language," *id.* at 41, 162:9-10; and Ms. Keuber's threat to make plaintiff take an aqua aerobics class. *Id.* at 42, 165:10-12. The Court first notes that Ms. Keuber's comments about older members are too attenuated to constitute evidence of discriminatory intent directed at employees. As for the remaining comments, the Court finds that they do not support an inference of discrimination sufficient to demonstrate pretext. *See Kirkpatrick v. Pfizer, Inc.*, 391 F. App'x 712, 720 (10th Cir. 2010) ("'stray remarks' and 'isolated or ambiguous comments are too abstract . . . to support a finding of age discrimination'") (citing *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994)). Ms. Keuber's comment that plaintiff was "old school" referred to plaintiff's lack of computer skills and

is not reasonably interpreted as a comment on plaintiff's age. *See* Docket No. 29-1 at 40, 158:18-24 ("I am not very good with technology. . . . So she would often refer to me as 'old school.' . . . I had struggled with the simplest things like email or things that were just commonplace for someone like her"). Likewise, the comment that plaintiff was a "good ol' boy" is not reasonably interpreted as age-based animus, but rather as a description of a group of clientele that plaintiff was particularly good at handling. *See id.* at 40, 159:23-160:1 ("because of me being a male, my age, that the other males my age we're going to bond together. We're the good ol' boys. That's how I get guys to join."). Ms. Keuber's threat to make plaintiff take an aqua aerobics class, as described in plaintiff's deposition, *see* Docket No. 29-1 at 41-42, 164:12-16, 166:3-7, has no apparent connection with age-based discrimination, especially since Ms. Keuber told another employee that she would have to do aqua aerobics if she did not attend other mandatory exercise classes. *See id.* Finally, plaintiff's claim that Ms. Keuber's "body language" suggested discriminatory animus is far too vague for a reasonable jury to conclude that plaintiff's termination was motivated by his age. *See id.* at 41, 162:6-19.

In plaintiff's affidavit, which he filed in connection with his response to defendants' motion, Docket No. 35, plaintiff cites additional evidence of Ms. Keuber's discriminatory intent. Plaintiff, however, fails to identify this evidence as Additional Disputed Facts, *see* Practice Standards (Civil cases), Judge Philip A. Brimmer § III.F.3.b.v, which violation of the Court's practice standards justifies the Court in not considering it. However, even if the Court does consider it, such evidence fails to raise a genuine dispute of material fact. First, plaintiff states that Ms. Keuber instituted a

system whereby an associate who did not have a sale for three consecutive days would lose "uptime," which was a valuable source of prospective members and potential sales revenue. Docket No. 35 at 4, ¶ 6(f). Plaintiff says that Ms. Keuber strictly applied this policy to plaintiff, but did not follow it with respect to employees under the age of 40. *Id.* Plaintiff, however, does not assert that Ms. Keuber strictly applied the policy to other employees over 40, *see id.*, which means that Ms. Keuber may have singled plaintiff out, but not for anything having to do with his age. Second, plaintiff states that Ms. Keuber gave his younger co-workers certain unidentified "sales incentives to close deals" that plaintiff did not receive. *Id.* at 5, ¶ 6(g). Like plaintiff's statement about the "uptime" policy, plaintiff does not state that Ms. Keuber denied such incentives to employees over 40, just that she denied them to plaintiff. Plaintiff's statement is not, therefore, evidence of discriminatory animus. Third, plaintiff alleges that he was the only employee not given a copy of a competitor health club's member list, which Ms. Keuber had received. *Id.* (citing Docket No. 35-7). But the exhibit that plaintiff cites states that plaintiff was not given a copy of the list because he "had been off that day." *See* Docket No. 35-7 at 1, ¶ 4. Finally, plaintiff makes a number of comments about Ms. Keuber's lack of ethics. *See generally* Docket No. 35 at 5-6. These comments have no bearing on whether plaintiff's termination was motivated by his age.

Because plaintiff has not carried his burden to show that CCAC's proffered reason for terminating his employment was pretextual, summary judgment is appropriate as to plaintiff's ADEA claim.

### B. Retaliation

Defendants argue that plaintiff cannot demonstrate a prima facie case of retaliation. "A prima facie case of retaliation requires the plaintiff to show that (1) he or she engaged in protected opposition to discrimination, (2) a reasonable employee would have considered the challenged employment action materially adverse, and (3) a causal connection existed between the protected activity and the materially adverse action." *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1202 (10th Cir. 2008) (citation omitted). Defendants argue that plaintiff has not shown that he participated in a protected activity. Docket No. 28 at 13. The Court agrees. Plaintiff does not address retaliation in his response to defendants' motion. Moreover, the retaliation allegations in plaintiff's complaint are limited to a vague assertion that he was terminated in part for "raising objections to [defendants'] unethical and deceptive practices" and for "objecting to illegal or improper actions by his employer." Docket No. 21 at 9, ¶¶ 62-63. This allegation, unsupported by evidence, is insufficient to survive summary judgment.

### C. Wrongful Termination

Colorado recognizes a public policy exception to the at-will employment doctrine. To assert a claim for wrongful termination under the public policy exception, an at-will employee must show:

> that the employer directed the employee to perform an illegal act as part of the employee's work related duties or prohibited the employee from performing a public duty or exercising an important job-related right or privilege; that the action directed by the employer would violate a specific statute relating to the public health, safety, or welfare, or would undermine a clearly expressed public policy relating to the employee's basic responsibility as a citizen or the employee's right or privilege as a worker; and that the employee was terminated as the result of refusing to perform the act directed by the employer.

*Martin Marietta Corp. v. Lorenz*, 823 P.2d 100, 109 (Colo. 1992). Additionally, the employee must present evidence "showing that the employer was aware, or reasonably should have been aware, that the employee's refusal to comply with the employer's order or directive was based on the employee's reasonable belief that the action ordered by the employer was illegal, contrary to clearly expressed statutory policy relating to the employee's duty as a citizen, or violative of the employee's legal right or privilege as a worker." *Id.*

The Court finds that plaintiff has not introduced evidence sufficient to create a dispute of material fact as to his wrongful termination claim. Plaintiff's response is silent as to this claim, and plaintiff has identified no statutory policy relating to his duty as a citizen or violative of his privilege as a worker sufficient to maintain this claim for relief.

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendants Millice Enterprises, LLLP and Cherry Creek Club, LLC's Motion for Summary Judgment [Docket No. 28] is **GRANTED**. It is further

**ORDERED** that plaintiff's first, second, third, fourth claims for relief are dismissed with prejudice. It is further

**ORDERED** that, within 14 days of the entry of judgment, defendant may have its costs by filing a bill of costs with the Clerk of the Court. It is further

**ORDERED** that this case is dismissed in its entirety.

DATED March 12, 2015.

                                  BY THE COURT:

                                  s/Philip A. Brimmer
                                  PHILIP A. BRIMMER
                                  United States District Judge